McAdams v. Town of Barnard (2005-542)

2007 VT 61

[Filed 20-Jul-2007]


 NOTICE: This opinion is subject to motions for reargument under
 V.R.A.P. 40 as well as formal revision before publication in the Vermont
 Reports. Readers are requested to notify the Reporter of Decisions,
 Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801 of
 any errors in order that corrections may be made before this opinion goes
 to press.


 2007 VT 61

 No. 2005-542


 Herbert Hall McAdams III and Supreme Court
 Letty McAdams
 On Appeal from
 v. Windsor Superior Court


 Town of Barnard March Term, 2007


 Theresa S. DiMauro, J.

 Karen McAndrew and Douglas D. Le Brun of Dinse, Knapp & McAndrew, P.C.,
 Burlington, and Kent J. Rubens of Rieves, Rubens & Mayton (Of Counsel),
 West Memphis, Arksansas, for Plaintiffs-Appellants.

 Timothy M. Eustace of Stitzel, Page & Fletcher, P.C., Burlington, for
 Defendant-Appellee.

 PRESENT: Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.

 
 ¶ 1. BURGESS, J. Herbert and Letty McAdams ("landowners")
 brought this action in superior court against the Town of Barnard for
 declaratory judgment to quiet title to their land in Barnard. Landowners'
 motion for summary judgment was granted in part, providing them with a
 judgment order stating that "there are no known public roads, easements,
 rights-of-way or trails" (hereinafter "public road" or "road") on their
 property. To the extent landowners sought additional relief in the form of
 a judgment that no other public roads exist, the court granted the Town's
 motion to dismiss. Landowners appealed the judgment, believing a
 definitive statement that there are no public roads on their land is
 necessary to quiet title. We reverse and remand.

 ¶ 2. The facts are not in dispute. Landowners hold title to
 approximately 280 acres in Barnard ("the property"). In 2001, landowners
 sought to make improvements to the property. As part of this process, they
 requested that the Town discontinue an abandoned, dead-end road, Town
 Highway (TH) #15, that crossed the property. The Town conducted a
 discontinuance hearing pursuant to 19 V.S.A. § 709 (requiring notice and
 hearing to discontinue a road) and discontinued the portion of TH #15
 crossing the property. Some time later, landowners were granted a building
 permit for their improvements, but a group of Town residents appealed
 issuance of the permit. Landowners ultimately prevailed in obtaining the
 permit after they appealed to the Environmental Court. Landowners then
 filed suit in federal court against the residents who had opposed the
 permit, claiming that the residents had acted in concert with state actors
 to deprive landowners of the permit in violation of their constitutional
 rights to due process and equal protection. The Town itself was not named
 as a defendant in that suit.

 ¶ 3. In 2003, the Town produced a set of maps depicting all parcels
 of land and known public highways and rights-of-way within the Town. The
 Town's maps indicated another public road, "Dean Road," crossed a portion
 of the property. There was also reference in Town records to another road
 of undetermined location, known as the "page 4 survey road" or "Fairbanks
 Road" that possibly affected landowners' title. Landowners thereafter
 filed the present suit against the Town to determine whether any valid town
 highways or rights-of-way existed on the property. 
 
 ¶ 4. In August 2004, the Town and landowners entered into a
 mediation agreement in the present case. The Town agreed to initiate § 709
 proceedings to discontinue Dean Road and Fairbanks Road. The Town also
 agreed to admit that it was not aware of any other roads or rights-of-way
 and that it claimed no interest in any roads or rights-of-way on the
 property. The agreement provided that, when these tasks were completed,
 landowners could move for summary judgment, with the Town reserving its
 right to respond to such a motion. In November 2004, the Town initiated
 proceedings to discontinue the two roads. 

 ¶ 5. Meanwhile, in the federal suit, landowners moved to amend their
 complaint to add the Town as a defendant. Prior to a ruling on that
 motion, a mediation session was held in January 2005. At the mediation
 session, all parties to the federal suit and the Town entered into a
 Memorandum of Settlement that provided in pertinent part:


 3. The Town of Barnard agrees, subject to formal Selectboard
 approval, that it will promptly take all appropriate legal steps
 to discontinue any known or claimed town roads or highways that
 traverse or lie within the McAdams' property, including taking all
 steps necessary to ratify its prior action in discontinuing TH 15. 
 Warnings to accomplish the foregoing shall be published no later
 than 30 days after the signing of this Agreement, and the action
 shall proceed with all deliberate speed.

 4. The Town agrees that if any other roads on the McAdams'
 property not presently known, become know[n], the Town will at
 that time take all appropriate steps to initiate discontinuance
 proceedings with respect to such newly-discovered ancient roads.

 5. The defendants, as individuals and in their official
 capacities, agree that they will not appeal or interpose any
 objection to the Town's actions in discontinuing the roads as
 stated in Paragraphs 3 [and] 4.

 6. The parties will exchange releases with respect to all
 claims, including but not limited to all claims for costs and
 attorneys' fees pursuant to 42 U.S.C. §§ 1983 and 1988, and
 settlement consideration at such times as the steps taken in
 Paragraph 3 have been accomplished and court orders have been
 entered on the settlement agreements in both the pending state and
 federal cases, and the actions have been dismissed, with
 prejudice.

 The Town completed discontinuance of all three known roads,(FN1) and
 subsequently requested landowners to stipulate to dismissal of the state
 court action pursuant to the federal mediation agreement. Landowners
 refused to agree to dismissal, maintaining that they were entitled to move
 for summary judgment on their claim for declaratory judgment pursuant to
 the state mediation agreement. Landowners subsequently filed a motion for
 summary judgment on June 20, 2005. At a hearing in superior court to
 discuss the proposed stipulated dismissal and landowners' objections to it,
 the court indicated that it would wait for a formal motion to dismiss from
 the Town and rule on both motions together. 
 
 ¶ 6. In support of dismissal, the Town argued first that it had
 complied with the federal settlement agreement and the case should be
 dismissed on that basis. The Town further argued that the case had become
 moot when all known roads over the property were discontinued and that the
 court was without authority to declare any remaining, unknown roads to be
 nonexistent when the statute provided only for discontinuance by town
 selectboards. Landowners took the position that the federal court
 settlement agreement did not supersede the state settlement agreement's
 provision that the state case would be decided on summary judgment. At
 most, said landowners, the federal court agreement was ambiguous and other
 evidence pointed to their intent that the state case not be dismissed. In
 response to the Town's mootness argument, landowners maintained that a
 quiet title action is not moot until all of a party's claims to a property
 are resolved, and that had not yet happened because there still existed the
 possibility that the Town could, at some later time, claim some newly
 discovered right-of-way across the property. Landowners further maintained
 that it was within the court's equitable power to declare the existence or
 nonexistence of roads, the statutory provisions for discontinuance
 notwithstanding.

 ¶ 7. The lower court's decision adopted all of the Town's arguments
 and concluded that landowners were not entitled to the judgment they sought
 for three reasons. First, the court said, the undisputed facts supported
 only a conclusion that there were no known public roads on the property,
 not that there were no public roads at all. Second, the court lacked
 authority to declare the non-existence of any public roads because roads
 may only be discontinued in accordance with a statutory procedure. 
 Finally, the Town was entitled to dismissal based on the federal settlement
 agreement.

 ¶ 8. On appeal, neither party briefed dismissal pursuant to the
 federal settlement agreement, focusing instead on the superior court's
 authority for declaring the nonexistence of any roads on a property and
 whether there was an actual case or controversy remaining. Arguments not
 briefed are waived. Bigelow v. Dep't of Taxes, 163 Vt. 33, 37-38, 652 A.2d
 985, 988 (1994). We therefore move to the issues of mootness and the
 court's authority to declare the nonexistence of roads.(FN2) 
 
 ¶ 9. Landowners brought this suit as a declaratory judgment action
 to quiet title. Declaratory judgment is appropriate when a judgment "will
 terminate the controversy or remove uncertainty." 12 V.S.A. § 4715. This
 controversy must involve the threat of actual injury to a party's protected
 interest. Doria v. Univ. of Vt., 156 Vt. 114, 117, 589 A.2d 317, 318
 (1991). Otherwise, "a declaratory judgment is merely an advisory opinion
 which [courts] lack the constitutional authority to render." Id. The Town
 does not dispute that the two claimed public rights-of-way provided a
 sufficient controversy to give the court jurisdiction at the time that
 landowners filed suit. The Town claims that by discontinuing the two known
 roads, any threat of actual injury to landowners ended, and consequently,
 jurisdiction was extinguished. 

 ¶ 10. Accepting the Town's position would allow quiet title
 defendants to escape final resolution of all potential disputes by taking
 each claim piecemeal. An adjudication that a right-of-way does not exist
 in one place on a property would not preclude subsequent litigation as to
 whether a right-of-way exists in another place on the same property. Some
 jurisdictions have taken a more economizing approach that provides for all
 potential disagreements to be adjudicated at one time: "The object of the
 [quiet title] action is to finally settle and determine, as between the
 parties, all conflicting claims to the property in controversy, and to
 decree to each such interest or estate therein as he may be entitled to." 
 W. Aggregates, Inc. v. County of Yuba, 130 Cal. Rptr. 2d 436, 456 (App.
 2002) (quotations omitted) (affirming finding that historic public road
 existed on plaintiff's property). A conflicting claim need not be active
 at the time of adjudication:

 [W]here a person is seized and possessed of a legal estate or
 interest and is unable to obtain an adequate legal relief against
 an invalid adverse title or right therein apparently arising under
 a deed, instrument or proceeding relating to real estate so that
 such deed, instrument, or proceeding may injuriously or
 vexatiously affect or embarrass the owner's title, or render
 precarious or doubtful his ability to produce existing extrinsic
 proof when, in the future, the adverse claimant would seek to
 enforce the adverse title or right which is being held in
 abeyance, the owner's privilege to have recourse to equity to have
 the cloud in his title or interest removed is unquestioned . . . .

 Homewood Realty Corp. v. Safe Deposit & Trust Co. of Baltimore, 154 A. 58,
 64 (Md. 1931) (emphasis added) (affirming adjudication in quiet title
 action of defendant's use of plaintiff's air space for opening and closing
 shutters when plaintiff was otherwise without remedy to clear title). 
 Thus, while there must be a threat of actual defect to a landowner's title
 for a case or controversy to exist, the threat can extend to claims that
 are not actively being pursued.

 ¶ 11. In this case, landowners filed suit after three roads had been
 identified on the property, at least two of which were legal rights-of-way
 claimed by the Town. The existence of these roads gave rise to a threat of
 actual defect in title and, thus, a justiciable case or controversy. 
 Resolution of the title dispute should then include all potential claims,
 to resolve once and for all, as between the parties, the title to the
 subject land.(FN3) Accordingly, we agree with landowners that when a
 party has claimed the existence of a right-of-way, a judgment expressing
 whether there are or are not any existing rights-of-way is ordinarily
 appropriate. However, this case is complicated by the fact that the party
 that claimed a right-of-way is a municipality. We next consider the effect
 of such a judgment in light of the statutory framework for discontinuing
 public roads. 
 
 ¶ 12. The Town argues that courts are without authority to declare
 the nonexistence of public rights-of-way when discontinuance of a public
 road may only be performed in accordance with statutory procedures. Before
 discontinuing a road, the town's selectboard must give public notice,
 examine the premises, and hold a hearing. 19 V.S.A. § 709. Failure to
 comply with these procedures will render any purported discontinuance void. 
 In re Bill, 168 Vt. 439, 442-45, 724 A.2d 444, 446-48 (1998) (finding road
 was not discontinued when selectboard failed to comply with then-applicable
 procedure for discontinuance); Capital Candy Co. v. Savard, 135 Vt. 14,
 16-17, 369 A.2d 1363, 1365-66 (1976) (holding that mere abandonment does
 not constitute discontinuance because statutory procedure for
 discontinuance has not been followed). While the Town is correct that a
 selectboard must follow statutory procedures to validly discontinue a road,
 this does not preclude adjudication of the issue of whether there are any
 existing public roads on a property. 

 ¶ 13. Determining whether any public roads exist is not the same as
 a discontinuance. Discontinuance is performed to extinguish a known road. 
 Here, the court is being asked to determine simply whether any roads exist.
 (FN4) The Town argues that a declaratory judgment "would effectively
 'discontinue' any and all currently unknown, but subsequently discovered,
 town highways across [the property]." Implicit in this argument is the
 Town's belief that it is impossible for the parties and, consequently, the
 court to determine with absolute certainty whether any additional roads
 exist over the property.(FN5) The difficulty in determining whether
 abandoned roads still legally exist stems from inconsistent, and sometimes
 incomprehensible, town records dating back two centuries or more. See
 generally P. Gillies, Sleeping Roads, Vt. Bar J., Spring 2004, at 14-16. 
 However, these difficulties should not preclude judgment in landowners'
 favor where the burden was on the Town to prove any right it had to the
 property. Beulah Hoagland Appleton Qualified Personal Residence Trust v.
 Emmet County Road Comm'n, 600 N.W.2d 698, 700 (Mich. App. 1999) ("In an
 action to quiet title, the plaintiffs have the burden of proof and must
 make out a prima facie case of title. If the plaintiffs make out a prima
 facie case, the defendants then have the burden of proving superior right
 or title in themselves." (citation omitted)). The burden was thus fairly
 placed on the Town to review its own records and discern whether any roads
 existed. That the Town might be barred in the future from asserting a
 right-of-way based on a newly discovered, but now unknown, road is not a
 "discontinuance" as contemplated by § 709, but is a function of res
 judicata or collateral estoppel precluding successive litigation over
 matters that the Town could have raised in the instant case. See In re St.
 Mary's Church Cell Tower, 2006 VT 103, ¶¶ 3, 12, __ Vt. __, 910 A.2d 925
 (mem.) (barring litigation of a claim that was or could have been fully
 litigated in prior proceeding); Scott v. City of Newport, 2004 VT 64 ¶ 8,
 177 Vt. 491, 857 A.2d 317 (mem.) (listing as a criterion of collateral
 estoppel that there was a "full and fair opportunity to litigate the issue"
 previously).

 ¶ 14. We emphasize that landowners may attain the remedy sought in
 this case only because abandoned, but legally existing, roads had been
 identified by the Town and still existed at the time suit was filed. These
 circumstances gave rise to a threat of actual defect in title from both
 identified and unidentified dormant roads and, thus, a justiciable case or
 controversy. 

 Reversed and remanded for determination of the existence of any public
 roads on plaintiffs' property.



 FOR THE COURT:



 _______________________________________
 Associate Justice


------------------------------------------------------------------------------
 Footnotes


FN1. In addition to Dean Road and Fairbanks Road, the Town renewed its
 discontinuance of TH #15 because of concern as to whether the Town followed
 the correct process to discontinue TH #15 in 2001.

FN2. There is support for the proposition that the federal court settlement
 agreement does not require dismissal in any event. Paragraph 6 of the
 federal court settlement appears to contemplate further court orders in the
 pending state case. In light of the prior state settlement that had
 explicitly contemplated landowners' moving for summary judgment, the
 federal court agreement could be interpreted as allowing for landowners'
 motion for summary judgment and not necessitating dismissal.

FN3. Because res judicata bars only relitigation of claims between the same
 parties or parties in privity, In re St. Mary's Church Cell Tower, 2006 VT
 103, ¶ 3, __ Vt. __, 910 A.2d 925 (mem.), this would not preclude claims
 by neighboring landowners to a private right-of-way over former public
 roads to the extent such claims are available under 19 V.S.A. § 717(c)
 (Cum. Supp. 2006).

FN4. A recent amendment to 19 V.S.A. § 717 implicitly acknowledges court
 authority to adjudicate the existence of roads. 2005, No. 178 (Adj.
 Sess.), § 4. That section now provides for a "presumption of
 discontinuance" when a road has not been maintained by the municipality for
 thirty years. 19 V.S.A. § 717(b). This presumption is rebuttable by
 evidence of the municipality's intent to continue the road as a public
 right-of-way. Id. A dispute as to the applicability of § 717(b) would
 apparently require court adjudication of whether the road is or is not
 presumptively discontinued, based on evidence of maintenance and intent.

FN5. The conundrum of known unknown roads brings to mind one of former
 Secretary of Defense Donald Rumsfeld's famous existential musings: "As we
 know, there are known knowns. There are things we know we know. We also
 know there are known unknowns. That is to say we know there are some
 things we do not know. But there are also unknown unknowns, the ones we
 don't know we don't know." D. Sevastopulo, Bush's Poet-in-Residence Rides
 Away to Find Montana, Financial Times, Nov. 11, 2006, at 3, available at
 2006 WLNR 19711333. Unaddressed by Mr. Rumsfeld's remarks is a potential
 fourth category, unknown knowns: things we do not know that we know.