STATE OF VERMONT

ENVIRONMENTAL COURT

In re: Higgins - Jockey Lane subdivision final plat }
(Appeal of Clark W. Hinsdale, III, and Monica Tupper) } Docket No. 200-8-06 Vtec }
}
}

Decision and Order on Renewed Motion for Summary Judgment
and Motion for Reconsideration

Appellants Clark W. Hinsdale III and Monica M. Tupper appealed from a decision of the Development Review Board (DRB) of the Town of Monkton granting final plat approval to Appellee-Applicants John and Lesley Higgins for a six-lot subdivision. Appellants are represented by Liam L. Murphy, Esq. and Pamela A. Moreau, Esq.; Appellee-Applicants are represented by Matthew T. Daly, Esq. The Town of Monkton is represented by David Rath, Esq., but has not taken an active role in the briefing of the pending motions.

This Court granted summary judgment in favor of Appellee-Applicants with respect to Questions 5, 6, 8, 9 of Appellants' Statement of Questions, and also with respect to those parts of Question 2 dealing with §§ 321(6), (9), and (13) of the Subdivision Regulations. In re: Higgins-Jockey Lane Subdivision Final Plat, Docket No. 200-8-06 Vtec (Vt. Envtl. Ct. Sept. 28, 2007). Appellee-Applicants have renewed their motion for summary judgment on Questions 1, 3, 4, 7, and 10 of their Statement of Questions, and on the parts of Question 2 that refer to §§ 321(2), (7), (11), and (12) of the Subdivision Regulations. The following facts are undisputed unless otherwise noted; as necessary to understand the present decision, portions of the facts as stated in the Court's September 2007 decision are repeated here. All references to section numbers are to the Subdivision Regulations unless otherwise noted.

1

Appellee-Applicants own an 85.83-acre parcel of land that they propose to subdivide into the six lots at issue in the present application. The project property has frontage on the north side of Jockey Lane in the Town of Monkton. Appellant Tupper owns a 10.2-acre parcel of land immediately to the north of and adjoining Appellee-Applicants' property. Appellant Hinsdale owns 78.5 acres of land in two parcels north of Appellee-Applicants' property, separated from it by another unrelated property.

Appellants claim rights of access to their property from Jockey Lane via private rights-of-way and/or by a so-called "pent" public road, over Appellee-Applicants' property. Appellants have filed[1] a complaint for declaratory relief in the Addison Superior Court for a declaration that the pent road and the rights-of-way exist over the Higgins' property giving access to Appellants' properties from Jockey Lane.

Appellee-Applicants propose to divide the 85.83-acre parcel into six lots, numbered[2] as Lots 7 through 12, each proposed to have a building site for a single-family house. The relative locations of the proposed building envelopes and infrastructure in relation to the rights-of-way are the focus of Appellants' Statement of Questions. Lots 7 through 11, the five southernmost of the six proposed lots, range from 5.1 acres to 7.9 acres in size. Proposed Lot 12 contains the remaining 53.8 acres and comprises the northern half of the project.

Proposed Lot 7 has frontage on Jockey Lane. Access to the subdivision is proposed

[1] The complaint was filed on July 25, 2007 and was assigned Docket No 197-7-07 Ancv. An answer has been filed and discovery is proceeding; as of January 15, 2008 the matter had not been scheduled by the Superior Court.

[2] The application uses a numbering system beginning with Lot 7, possibly due to a prior subdivision having lots numbered 1 through 6, while Appellants' Exhibit C shows the lots for the present proposal as numbered 1 through 6. To avoid confusion, this decision uses the numbering system used in the application at issue in the present case, referring to the lots as numbered 7 through 12.

to be by a subdivision road having a fifty-foot-wide right-of-way and extending northerly from Jockey Lane at the southwesterly corner of Lot 7, through Lots 7 and 8, and terminating in a cul-de-sac located on Lot 9. A fire pond to provide water for fire fighting is located within the cul-de-sac. Two additional fifty-foot-wide easements benefitting Lot 12 extend northerly from the cul-de-sac, one over Lot 9 and one over Lot 11. Access to each house site is via a separate driveway from the subdivision road, except that access to the house site on Lot 12 is by an extension of the driveway serving Lot 11.

Appellants and Appellee-Applicants agree that several traveled ways cross the proposed subdivision and appear to agree as to their locations; they disagree as to the legal status of these traveled ways and as to whether the more westerly of these is a so-called "pent" or enclosed public road.[3]

Two asserted rights-of-way extend northerly from Jockey Lane, crossing into Lot 12 of the proposed subdivision at its southeasterly and southwesterly corners. The more easterly of these asserted rights-of-way extends northerly from Jockey Lane along the proposed subdivision roadway to just past the driveway for the house site on Lot 7, and then extends northerly through proposed Lots 8 and 9, crossing through or very close to the proposed sites for the septic disposal fields, house sites, and well shield envelopes on Lots 8 and 9. After extending onto Lot 12 at its southeasterly corner, one branch of this asserted right-of-way extends to the north across Lot 12 onto the property directly to the south of Appellant Hinsdale's property. On Lot 12, the other branch of the more-easterly asserted right-of-way turns to the west and extends westerly across Lot 12, crossing the

---

[3] The term "pent road" is defined as "any town highway which, by written allowance of the selectmen, is enclosed and occupied by the adjoining landowner with unlocked stiles, gates and bars in such places as the selectmen designate." 19 V.S.A. § 301(4). The legislative body of a municipality may discontinue any town highway under the procedures found in 19 V.S.A. §§ 708-11. 19 V.S.A. § 771(a).

proposed driveway to the Lot 12 house site and crossing through the proposed site for the primary disposal field for Lot 12.

The more westerly of the two asserted rights-of-way is the one claimed by Appellants to be a "pent" public road. It extends northerly from Jockey Lane over unrelated land and enters the proposed subdivision along the westerly boundary of Lot 11 onto Lot 12 at its southwesterly corner, extending to the north across Lot 12 onto or near Appellant Tupper's property.

Appellee-Applicants and the Town of Ferrisburgh entered into a settlement stipulation that was ratified by the Town of Ferrisburgh on June 5, 2007, ratified by the Town of Monkton on July 9, 2007, and approved by the Court on July 17, 2007. The stipulation provided that Ferrisburgh would agree to approval of the subdivision if the traveled portion of the access drive is at least twenty feet wide, if all other roads in the subdivision are at least fourteen feet wide, if the dry hydrant and fire pond are constructed to provide sufficient fire protection as determined by the Chief of the Ferrisburgh Fire Department, if Appellee-Applicants convey an easement to the Town of Monkton at the southeast corner of the property for the construction of a separate cul-de-sac adjacent to Jockey Lane, if Appellee-Applicants provide by covenant for the maintenance of the dry hydrant, fire pond, and subdivision roadway, and if they file a revised plot plan depicting these conditions. The revised plot plan referred to in the settlement has not been filed with the Court as of the date of this decision.

Question 10 of the Statement of Questions

Question 10 asks whether the layout of the proposed subdivision protects and provides for forestry and recreational uses to continue on adjoining properties, specifically citing "Section 2, subsections E and F" of the Monkton Town Plan. Section 305(2) of the Subdivision Regulations requires subdivisions to "be in harmony with the Town Plan."

4

Appellee-Applicants' response focused on the provisions for forestry and recreational uses within the subdivision project property, rather than the adjoining property.

The September 2007 decision denied summary judgment on this issue because the Town Plan had not been provided. Appellee-Applicants have now submitted a copy of a Municipal Development Plan dating from May of 1977, consisting (in full) of two pages of text and one map, with no numbered subsections. However, the citation to "Section 2, subsections E and F" of the Town Plan in Question 10 suggests to the Court that the parties dispute the edition of the Town Plan that is applicable to this proceeding. At the very least, the discrepancy between the municipal plan provided by Appellee-Applicants and Question 10 as stated by Appellants precludes its resolution on summary judgment.

Therefore, Appellee-Applicants' Renewed Motion for Summary Judgment remains DENIED regarding Question 10, as material facts are in dispute as to the applicable Town Plan.

Question 1 of the Statement of Questions

Appellants' Question 1 addresses whether the proposed subdivision plat contains certain information required to be included in the application, specifically whether it accurately shows and identifies existing accesses to Appellants' parcels to the north of the subdivision property, pursuant to § 210(4[4]). Section 210 requires (in the first subsection (4)) that the applicant submit information regarding "existing restrictions on the use of land, including easements" and requires (in the second subsection (4)) that the applicant submit information regarding "streets which are proposed, mapped, or built."

This Court is without jurisdiction to determine the extent of the property rights of

[4] Section 210 contains two sets of numbered subsections, both of which are required for the present project as it is a "major" subdivision of more than three lots and requires a new street.

5

the parties with respect to any claimed right-of-way or claimed pent public road; that matter is before the Addison Superior Court. This Court does have jurisdiction to determine whether an application for subdivision has met all the requirements for submission and for approval under the Subdivision Regulations.

In the September 2007 decision, the Court noted that the plans provided with the motions were reduced size versions of the subdivision plans, at a reduction of approximately one-quarter of the size of the plans submitted with the application, including two versions of Sheet C2, entitled "LOT LAYOUT, RIGHT OF WAY, AND EASEMENT SHEET." The September 2007 decision denied summary judgment on Question 1 due to the lack of a legend or key on Sheet C2 to define whether the dotted-and-dashed lines shown as extending from Jockey Lane towards the north (as well as the east-west line through proposed Lot 12) in the locations asserted by Appellants to be either private rights-of-way or a pent public road are claimed by Appellee-Applicants to be "existing restrictions on the use of land, including easements" or to be "streets which are . . . mapped," under § 210. The September 2007 decision concluded that without a key, legend, note or narrative, material facts were in dispute as to whether Sheet C2 of the proposed subdivision plan meets the requirements of § 210.

With their Renewed Motion, Appellee-Applicants have submitted a revised version of Sheet C2 that labels the dotted-and-dashed lines as "Existing Logging Trails, Typical as Shown," and have also submitted an affidavit from Appellee-Applicant John Higgins explaining that the dotted-and-dashed lines were placed on Sheet C2 based on aerial photographs showing what the affidavit characterizes as "actual trails" on the property. Mr. Higgins' affidavit states his lack of knowledge of whether or not these "trails are reflected in any recorded instruments that apply to the property."

This evidence does not resolve the dispute between the parties regarding the adequacy of the application, that is, whether the application properly reflects existing

6

restrictions on the use of the land and proposed or mapped streets, deeded or otherwise. While the parties appear to agree as to the locations of the actual traveled ways, they fundamentally dispute whether the traveled ways represent "existing restrictions on the use of land" or "streets which are proposed, mapped or built," or whether they are instead a category of traveled way that does not have to be shown on a subdivision application. Therefore, Appellee-Applicants' Renewed Motion for Summary Judgment on Question 1 is DENIED,  as material facts are in dispute.

Questions 2 and 7 of the Statement of Questions with respect to §§ 321(1), (2), (11) and (12)

Appellants' Question 2 asks in part whether the proposed subdivision meets the requirements of §§ 321(2), (11) and  (12) regarding the issues of access to adjoining parcels, fire protection, and provision for utilities.   The September 2007 decision denied summary judgment due to the as-yet-unresolved (or "known unknown[5]" ) status of the asserted rights-of-way and asserted "pent" public road.   Appellants' Question 7 also relates to whether the fire department can provide fire protection to the proposed subdivision.  In Appellants' opposition to the Renewed Motion for Summary Judgment, they argue as to Question 7 that, as well as implicating §445 (discussed below), the proposed subdivision does not meet the requirement of § 321(1) that "[s]treets shall be suitably located to . . . afford satisfactory access to fire fighting . . . equipment."

For the same reasons as discussed in the September 2007 decision, and construing all doubts and inferences in favor of the nonmoving party, Collins v. Thomas, 2007 VT 92,

---

[5]  The Vermont Supreme Court aptly described the "conundrum" of such "known unknown roads" by quoting former Secretary of Defense Donald H. Rumsfeld's "existential musings" that: "there are known knowns. There are things we know we know. We also know there are known unknowns. That is to say we know there are some things we do not know. But there are also unknown unknowns, the ones we don't know we don't know." McAdams v. Town of Barnard, 2007 VT 61, ¶ 13 n. 5 (citations omitted).

¶ 6, until the status of the asserted rights-of-way (including the asserted "pent" public road) is resolved, this Court cannot determine whether the design of the subdivision or the relative locations of the subdivision roadway and those rights-of-way cause any hardship to adjoining properties or compose a convenient system, or whether the project roadways or their continuation to the property lines are necessary for convenient movement of traffic, for fire protection, or for the efficient provision of utilities to those adjoining properties or to the subdivision.

Therefore, because the issue remains unresolved as to whether or where rights-of-way and/or a pent public road exist on the proposed subdivision, Appellee-Applicants' Renewed Motion for Summary Judgment on Question 2 and on Question 7 is DENIED as to §§ 321(1), (2), (11) and (12)

Questions 2 and 3 of the Statement of Questions with respect to § 321(7)

Appellants' Question 3, and a portion of Question 2, asks whether the proposed subdivision meets the requirements of § 321(7) of the Subdivision Regulations with regard to provisions for widening the existing public street. Section 321(7) requires that, "[w]here the subdivision borders on an existing street and the Town Plan or Official Map indicates plans for realignment or widening of the street that would require reservation of some land of the subdivision," the final plat must mark those areas as "Reserved for Street Realignment (or Widening) Purposes." The September 2007 decision considered the "existing street" to be Jockey Lane,[6] as the only street "border[ing] on" the proposed subdivision, and denied summary judgment on this issue because the parties had not

_____

[6] The fact that it is the Town of Ferrisburgh that maintains Jockey Lane (by agreement with the Town of Monkton) does not assign responsibility to the Town of Ferrisburgh for the potential widening or realignment of that street within the Town of Monkton.

8

provided either the Town Plan or the Official Map, or an appropriate affidavit, to show that the Town Plan and Official Map do not indicate plans for its realignment or widening.

Appellee-Applicants have not submitted a copy of or affidavit regarding the Official Map, but have submitted a copy of the 1977 Municipal Development Plan.[7] The 1977 Plan does not contain any plans for any street widening or realignment, and accordingly does not refer to any such plans with regard to Jockey Lane. However, material facts are in dispute as to whether the 1977 Plan is the applicable Town Plan.

If the 1977 Plan is the applicable town plan, and if the applicable Town Plan and Official Map do not indicate any plans for the widening or realignment of Jockey Lane, Appellee-Applicants are not required to mark areas as reserved for such purposes on their final plat, and therefore Appellee-Applicants' Renewed Motion for Summary Judgment would be granted on Question 3 and that part of Question 2 dealing with Subdivision Regulations § 321(7). It must be denied, however, until the issue of the applicable Town Plan is resolved and until the Official Map (or an appropriate affidavit regarding the Official Map) is also provided (or provided as an agreed or undisputed fact).

Question 4 of the Statement of Questions

Question 4 of the Statement of Questions asks whether the application meets the requirements of § 340, which gives the DRB discretion to require the subdivider to set aside fifteen percent of the land to be subdivided for parks, playgrounds, or other recreational purposes or, in the alternative, to require payment of an amount not to exceed fifteen percent of the project parcel's fair market value if a park, playground, or other recreational use cannot be practically sited on the land. The Court, in this de novo appeal, applies the standards applicable before the DRB; that is, it must exercise its discretion as provided in

---

[7] See discussion at Question 10, above.

9

§ 340.

Appellee-Applicants have submitted the affidavit of the Zoning Administrator to the effect that the DRB has never required land to be set aside under § 340 and that it recently discontinued its "policy" of requiring the alternative fee. While this is informative of the DRB's past or current practices, material facts are in dispute on the merits of whether a recreational set-aside or alternative fee should be considered by the Court under § 340 for this proposed subdivision. Accordingly, Appellee-Applicants' Renewed Motion for Summary Judgment is DENIED as to Question 4.

Question 7 of the Statement of Questions

Appellants' Question 7 asks whether the proposed subdivision application adequately demonstrates that the Monkton Fire Department can provide fire protection to the proposed subdivision. The September 2007 decision treated this question as addressing whether the subdivision proposal meets § 445 of the Subdivision Regulations and determined that material facts are in dispute, or at least have not been provided to the Court, as to whether the Monkton Fire Chief is satisfied with the adequacy of the water storage facilities for fire protection provided by the subdivision plan, as required by § 445, and as to whether the dry hydrant to be installed in connection with that fire pond meets the requirements of § 445 for the installation of fire hydrants in the subdivision.

Appellee-Applicants' have submitted a letter from the Monkton Fire Chief that the proposed dry hydrant and fire pond in the subdivision would provide adequate fire protection. Therefore to the extent that Question 7 relates to § 445, Appellee-Applicants' Renewed Motion for Summary Judgment is GRANTED.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellee-Applicants' Renewed Motion for Summary Judgment is GRANTED with respect

10

to the portion of Question 7 addressing § 445; it is otherwise DENIED with respect to Question 1, with respect to the portions of Question 2 addressing §§ 321(2), (7), (11), and (12), with respect to Question 3, with respect to Question 4, with respect to Question 7 so far it relates to § 321(1), and with respect to Question 10, as material facts remain in dispute.

A telephone conference has been scheduled (see enclosed notice) to discuss the appropriate next scheduling for this matter, including whether this matter should be placed in an inactive status until the superior court proceedings have resolved the status of the asserted rights-of-way at issue in this appeal.

Done at Berlin, Vermont, this 23rd day of January, 2008.

_____
Merideth Wright
Environmental Judge