## STATE OF VERMONT
## SUPERIOR COURT - ENVIRONMENTAL DIVISION

|  | { |  |
|---|---|---|
| **In re Zaremba Group Dollar General** | { | **Docket No. 66-5-12 Vtec** |
| **(Application No. 430)** | { | **(OTR appeal from Chester DRB)** |
|  | { |  |

### Decision in On-the-Record Appeal

In this on-the-record appeal, Shawn Cunningham, Claudio Veliz, Scott Morgan, Georgette Thomas, Brian Morris, Karen Morris, Laura Thomas, Diana Ashworth, Gary Farmer, Michele Bargefrede, Carrie King, Gary King, Jackie Restmeyer, Phillisa Jones Prescott, Matthew A. Prescott, Michael R. Erskine, John Knisley, Hannah Monier, Sarah Yake, Sharon Baker, Jessie Alon, Michael Alon, Wayne LeFevre, Donald Payne, Stephanie Whiting-Payne, Gail S. Gibbons, and Robert D. Gibbons (Appellants) appeal an April 16, 2012 decision by the Town of Chester Development Review Board (the DRB) granting conditional use approval to Zaremba Program Development, LLC, f/k/a Zaremba Group, LLC (Applicant) to build and operate a retail store and associated infrastructure (the Project) on a 1.37-acre lot (the Property) in the Town of Chester, Vermont (the Town).

In reviewing the merits of this on-the-record appeal, the Court has taken into account the parties' briefs and the record, consisting of Appellants' Printed Case (filed March 22, 2013) and Appellee Zaremba Group's Printed Case (filed April 22, 2013). The Court has also taken into account the DRB's April 16, 2012 decision which, although it contains partial flaws that require remand for further clarification, demonstrates clear effort on the part of the DRB and is detailed and well-organized.

Appellants are represented by James A. Dumont, Esq.; Applicant is represented by David Cooper, Esq.; the Town of Chester is represented by James F. Carroll, Esq.

### Discussion

### I.     Standard of review.

In an on-the-record appeal to this Court pursuant to V.R.E.C.P. 5(h), our review is limited to the record made before the municipal panel and the briefs submitted by the parties. See In re Saman ROW Approval, No. 176-10-10 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. Sept. 2, 2011) (Durkin, J.). We are not permitted to make our own assessment of the credibility

1

of witness testimony or reweigh conflicting evidence in the record. See Devers-Scott v. Office of Prof'l Regulation, 2007 VT 4, ¶ 6, 181 Vt. 248. Rather, we read the DRB's findings of fact and we examine the record (including the application, other exhibits, and the transcript of the hearing) to determine whether it contains relevant evidence that a "reasonable person could accept . . . as adequate" support for those factual findings. Id. at ¶ 6 (quoting Braun v. Bd. of Dental Exam'rs, 167 Vt. 110, 114 (1997)). If so, we review the DRB's legal conclusions de novo. See In re Stowe Highlands Resort PUD and PRD Appl., 2009 VT 76, ¶ 7, 186 Vt. 568 (mem.). One purpose for the requirement that decisions afforded on-the-record review include findings of fact is to provide "a clear statement to the parties and the court in the event of an appeal on what was decided and how the decision was reached." In re Appeal of Leikert, No. 2004-213, slip op. at 1 (Vt. Nov. 2004 term) (unpublished mem.) (discussing the important functions served by findings of fact). This Court has been cautioned against "fill[ing] in the gaps" left by deficient decisions. Id. at 2.

As this Court has stated before, "[w]hen a municipality elects to make its land use determinations subject to on-the-record review, it is committing to meeting the procedural requirements in [the Municipal Administrative Procedure Act] or risking the remand of its determinations and, consequently, the loss of some of its earlier efforts." In re Brandon Plaza Conditional Use Permit, No. 128-8-10 Vtec, slip op. at 6–7 (Vt. Super. Ct. Envtl. Div., Mar. 26, 2012) (Walsh, J.). See also In re Grist Mill Horse Barn Redevelopment Plan (2nd Appeal), No. 89-5-09 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. Aug. 5, 2010) (Durkin, J.) (explaining that since the City of Vergennes had taken the necessary steps to make its land use determinations subject to on-the-record review, the Court could not conduct a de novo review of its municipal panel's decision despite the risk that the decision could be remanded a second time).

Appellants' arguments focus on the DRB's legal conclusions that the Project does not adversely impact two general conditional use criteria under the Town of Chester Zoning Regulations (Regulations): traffic and the character of the area affected (Regulations § 9.4(c)(1)(C) & (B)). Appellants also challenge the DRB's conclusions under Regulations § 9.4(c)(4)(A),[1] which lists a "special" conditional use criterion related to architectural

_____

[1] Appellants' brief also addresses Special Criterion D (Regulations § 9.4(c)(4)(D)). Appellants' Statement of Questions mentions only Special Criterion A, however. We are limited in our review to questions raised in the Statement of Questions, and thus we do not address Appellants' arguments concerning

2

appearance.  Appellants' Statement of Questions also encompasses two other arguments which we do not address as they have been waived. [2]

## II.     The character of the area affected.

The Regulations require the DRB to approve conditional uses only where such uses do not adversely affect "[t]he character of the area affected."  Regulations § 9.4(c)(1)(B).  In this on-the-record analysis, we thus start with a fundamental question: what <u>factual findings</u> did the DRB make concerning (1) the current state the character of the area affected and (2) the Project's potential impact on that character?  Next, we examine the record to see if it contains support that a reasonable person could accept as adequate to support those findings.  If such evidentiary support exists, we use those factual findings to conduct a de novo review of the DRB's legal conclusions.  Appellants assert that the DRB's factual findings and legal conclusions were insufficient, and we agree.

### a.   The DRB's factual findings regarding the character of the area

Applicant correctly notes that the DRB's decision contains <u>extensive</u> factual findings about the visual appearance and use of the Project itself.  However, the decision includes almost no specific factual findings on the character of the area in which the Project would be constructed.  The DRB decision does state that the lot on which the Project is located "is surrounded by several commercial buildings with private residences close by and across the street."  (Appellee's Printed Case at 11, filed Apr. 22, 2013.)  This finding, however, provides no other details that explain the character of the area, such as (but not limited to) the nearby structures' size, architectural features, lot coverage, height, setbacks, hours and types of use, landscaping, prominent topographical features, and parking configurations.[3]  Simply put, we cannot assess whether the DRB was correct in concluding that the Project fits in with its

Regulations § 9.4(c)(4)(D).  See V.R.E.C.P. Rule 5(f) ("The appellant may not raise any question on the appeal not presented in the statement [of questions] as filed").

[2]  Parties agreed at a status conference on July 30, 2012 that they would brief all questions in the Statement of Questions within their briefs on the merits rather than in pretrial motions.  Since Appellants have not briefed Questions 5 or 6, they have waived those issues.  See <u>McAdams v. Town of Barnard</u>, 2007 VT 61, ¶ 8, 182 Vt. 259 ("Arguments not briefed are waived."); <u>In re T.A.</u>, 166 Vt. 625, 626 (1997) (mem.) ("Issues not briefed are waived.").

[3]  We do not intend, in providing examples, to imply that the DRB must necessarily include details on each of these topics; rather, the DRB must identify the factors most relevant to its analysis of the Project's impact on the character of the area affected and make specific factual findings on those factors.  The mere statement that there are commercial and residential buildings close by, however, is insufficient, as it does not enable us to understand the DRB's findings regarding the character of the area.

surroundings without sufficient findings of fact regarding those surroundings. Although the DRB members themselves are likely familiar with their town, the DRB must not assume that the audience for which it writes its decision (especially this Court), is familiar with Chester. Indeed, even if the record contains evidence about the character of the area, the Court is simply not permitted to make its own findings of fact; rather, the DRB must make specific factual findings within its decision.

Had the DRB included more complete findings, we would look to the record to discern whether the DRB based its findings (regarding both the character of the area affected and the features of the proposed development that could impact that character) on evidence received at the hearing. We would not reweigh conflicting evidence in the record; rather, we would uphold the factual findings if the record simply contains relevant evidence that a reasonable person could accept as adequate support. See Devers-Scott v. Office of Prof'l Regulation, 2007 VT 4, ¶ 6, 181 Vt. 248. If so, we would then reach an independent determination as to whether the Project (as described in the DRB's supported factual findings) would adversely impact the character of the area affected (as described in the DRB's supported factual findings). Without specific findings of fact by the DRB regarding the character of the area affected, we cannot conduct our necessary on-the-record analysis under Regulations § 9.4(c)(1)(B).

### b. The DRB's legal conclusions regarding the character of the area

Although the on-the-record review process enables this Court to review a DRB's legal findings de novo (that is, without deference), we nonetheless caution that in rendering legal conclusions, an appropriate municipal panel, particularly in an on-the-record municipality,[4] must specifically state why the facts of the proposed project fit within applicable legal standards. Here, the DRB's conclusion of law with respect to the Project's impact on the character of the area affected reads, in its entirety:

> The new project is a (9,100 square feet) retail store. A retail store is an allowed use in the Residential Commercial District.

---

[4] On-the-record municipalities must satisfy the procedural requirements established in the Vermont Municipal Administrative Procedures Act (MAPA). See 24 V.S.A. 4471(b). MAPA requires that final decisions of appropriate municipal panels "separately state findings of fact and conclusions of law." 24 V.S.A. § 1209(a). Findings of fact must "explicitly and concisely restate the underlying facts that support the decision" and be "based exclusively on evidence" in the record. Id. § 1209(a), (b). Conclusions of law must be based on those findings. Id. § 1209(c). See also In re Appeal of Leikert, No. 2004-213, slip op. at 1 (Vt. Nov. 2004 term) (unpublished mem.) (discussing the important functions served by findings of fact). This Court may not "fill in the gaps" left by deficient municipal panel decisions. Id. at 2.

> Based on the conclusions stated above, it is the opinion of the Development Review Board that this application does not adversely affect this criterion.

(Applicant's Printed Case at 10, filed Apr. 22, 2013.)

Although a retail store is an allowed use, no party disputes that the Project is allowed only subject to the Regulations' Conditional Use standards, including the requirement that a proposed development not adversely impact the character of the area affected pursuant to Regulations § 9.4(c)(1)(B). Here, the DRB provided no legal analysis explaining why it concluded that the Project meets this particular Conditional Use criterion. This is the section of the decision where the DRB should be linking together its findings of fact about the Project itself with its findings of fact about the character of the area in which the Project is to be located. This is the section of the decision where the DRB should explain <u>how</u> relevant features of the Project, such as size, use, appearance, landscaping, etc., do or do not impact the character of the surrounding area. Because the DRB's decision fails to include an adequate analysis, we must conclude that the DRB's conclusions of law are also lacking.

III.    <u>General conditional use criterion: traffic.</u>

The Regulations require the DRB to approve conditional uses only where such uses do not adversely affect "[t]raffic on roads and highways." Regulations § 9.4(c)(1)(C). Again, in this on-the-record analysis, we start with the DRB's factual findings concerning the Project's potential impact on traffic. If the record contains reasonable evidentiary support for those findings, we conduct a de novo review of the DRB's corresponding legal conclusions.

a.  **The DRB's factual findings regarding traffic**

Although the DRB's decision contains factual findings about some traffic-related aspects of the Project, such as the way in which trucks will access and exit the Project site and how many trips the Project will generate, the DRB made no factual findings that contextualize these aspects of the Project so as to explain their effect, or lack thereof, on existing traffic conditions. Without specific findings of fact by the DRB regarding the existing traffic conditions and the Project's potential effect upon them, we cannot conduct our necessary on-the-record analysis under Regulations § 9.4(c)(1)(C).

b.  **The DRB's legal conclusions regarding traffic**

The DRB's conclusion of law with respect to the Project's impact on traffic reads, in its entirety:

The applicant shall be responsible for the costs of a detail traffic officer if it is determined that traffic problems are originating from their entrance onto South Main Street.

The applicant shall install a stop sign at the exit of the joint access as directed by the Police Chief.

Based on the conclusions stated above, it is the opinion of the Development Review Board that this application does not adversely affect this criterion.

(Applicant's Printed Case at 10, filed Apr. 22, 2013.) This brief recitation of the conditions that the DRB imposed does not explain how these conditions will result in no adverse impact on traffic. We conclude that the DRB's conclusions of law regarding traffic are also lacking.

In light of our decision to remand this matter to allow the DRB to clarify its factual and legal findings, we do not reach Applicant's assertion that Appellants may not challenge the sufficiency of the DRB's decision regarding traffic. If Appellants renew their traffic-based challenges after the DRB's clarified decision, Applicant may present its argument at that time.

## IV.     Challenged Special Conditional Use Criterion.

The Regulations state that in the Residential-Commercial District, the DRB "should" consider several "Special Criteria" in evaluating a conditional use permit application, including:

That all construction of new buildings, as well as any exterior alteration, fencing, lighting, reconstruction[,] or renovation of existing building[s] adhere harmoniously to the over-all New England architectural appearance which gives the center of Chester its distinct regional character and appeal.

Regulations § 9.4(c)(4)(A).[5] The DRB found that the Project would not adversely affect this criterion based on particular features of the Project, including the building's horizontal clapboards, cornice boards, corner boards, and rake boards; the natural wood to be used on window and door casings; the natural wood fencing; and the flat finish, dark colored lighting fixtures, and associated structures.

These features might demonstrate that the Project "adhere[s] harmoniously to the over-all New England architectural appearance" of the center of Chester, but it is not possible for this Court to confirm this without some factual findings about the center of Chester's appearance.

---

[5] The DRB reproduced criterion (4)(A) in its decision almost verbatim, but omitted the words "the center of" before the word "Chester." Two other minor transcription errors exist: the DRB added an "s" to the word "building" without indicating in brackets that the "s" did not appear in the original, and it wrote the contraction "it's" rather than the possessive "its." Appellant characterizes the DRB's recitation of this section of the Regulations as a "paraphrase," and asserts that the DRB used the wrong standard: Chester as a whole rather than the center of Chester. As we are remanding this decision for clarification, we do not reach this question at this time.

6

Again, gaps in the findings of fact within the decision lead to a lack of a point of comparison. We conclude that the DRB's factual findings and legal conclusions are insufficient for this on-the-record review as to Regulations § 9.4(c)(4)(A).

Additionally, Applicant argues that Regulations § 9.4(c)(4)(A) is comprised of unenforceable aspirational language. Without ruling on the merits of this argument, we reject Appellants' contention that Applicant may only raise it through cross appeal. Appellants challenged the DRB's finding under Regulations § 9.4(c)(4)(A) in their Statement of Questions, and we see no legal precedent for preventing Applicant from arguing that the provision is unenforceable under applicable law, as the enforceability of a provision is a matter intrinsic to Appellants' challenge. See, e.g., In re Appeal of Jolley Assocs., 2006 VT ¶ 9, 181 Vt. 190. If, after remand and clarification, Appellants continue to challenge the DRB's findings under Regulations § 9.4(c)(4)(A), we will take up the question of aspirational language at that time.

## Conclusion

For the reasons detailed above, we must **REMAND** the pending matter to the Town of Chester Development Review Board for clarification of its findings of fact and conclusions of law regarding only Regulations § 9.4(c)(1)(B) & (C)) and Regulations § 9.4(c)(4)(A). We recognize that municipal boards are often made up of lay people serving as volunteers, many of whom have limited training in adjudicative matters. We hope this decision will assist the DRB in understanding how to fulfill its role of ensuring that property owners and interested persons receive an adjudicative process that is fair, comprehensible, and not unnecessarily delayed.

This completes the current proceedings before this Court. A Judgment Order accompanies this Decision.

Done at Middlebury, Vermont this 12th day of June, 2013.


_____
Thomas G. Walsh, Environmental Judge