STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT | ENVIRONMENTAL DIVISION |
| | Docket No. 116-11-18 Vtec |

| | |
|---|---|
| Tuggle PUD | DECISION ON THE MERITS |

In this on-the-record proceeding, Lynne Stern, Karen Julian, Kris Clement, and Kathy Spruck (together, Neighbors) appeal a Town of Norwich Development Review Board (DRB) decision approving an application for a Planned Unit Development (PUD) submitted by Elizabeth and F. Folger Tuggle. The decision permits the Tuggles to construct a residence on their property located in Norwich, Vermont.

Both the Tuggles and Neighbors are self-represented in this matter. The Town of Norwich (Town) is represented by Nicholas A.E. Low, Esq.

**Standard of Review**

In an on-the-record appeal, the Court considers only the decision below, the record made before the municipal panel, and the briefs submitted by the parties. In re Saman ROW Approval, No. 176-10-10 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. Sept. 2, 2011) (Durkin, J.). We do not take new evidence or make our own factual determinations. Instead, we review the municipal panel's factual findings to determine whether the decision below "explicitly and concisely restate[s] the underlying facts that support the decision." See 24 V.S.A. § 1209(a)—(b).

The Court will affirm factual findings only if they are supported by substantial evidence in the record below. See In re Stowe Highlands Resort PUD to PRD Application, 2009 VT 76, ¶ 76, 186 Vt. 586. In examining whether there is substantial evidence in the record, the Court does not assess the credibility of witness testimony or reweigh conflicting evidence in the record. See Devers-Scott v. Office of Prof'l Regulation, 2007 VT 4, ¶ 6, 181 Vt. 248; In re Appeal of Leikert, No. 2004-213, slip op. at 2 (Vt. Nov. 2004) (unpub. mem.). The Court simply looks to whether the record includes relevant evidence that a "reasonable person could accept . . . as adequate" support for the factual findings. Devers-Scott, 2007 VT 4, ¶ 6 (quoting Braun v. Bd. of Dental Exam'rs, 167 Vt. 110, 114 (1997)).

The Court reviews the DRB's legal conclusions without deference, unless such conclusions are within the DRB's area of expertise. Stowe Highlands, 2009 VT 76, ¶ 7. Additionally, our review is limited to those issues raised by an appellant's Statement of Questions. See V.R.E.C.P. 5(f).

With these standards in mind, we conduct our review of the legal issues preserved by the Neighbors' Statement of Questions.

## Background

The Tuggles own property located at 47 Waterman Hill Road in Norwich, Vermont. This property is approximately 35 acres and is located in the Rural Residential District as defined by the Town of Norwich Zoning Regulations (Regulations). The Tuggles also own an adjoining property located at 161 Waterman Hill Road. The Tuggles acquired this property in 2013. This property is 30 acres and is also located in the Rural Residential District (together, the Property). Therefore, combined, the Property is 65 acres. Neighbors own property across the road from the Property.

47 Waterman Hill Road is presently improved by two residences and agricultural buildings related to the Tuggles' farming operations on the Property. 161 Waterman Hill Road is presently improved by a structure used for hay storage, a run-in shed, and a two-car garage. The Tuggles seek to integrate the two lots into a single working farm with cows, horses, egg-laying chickens, and turkeys.

The Tuggles submitted the present application for a PUD on June 14, 2018. The proposal requests approval of the entire 65-acre lot as a PUD. Within that, it requests approval to construct a third residence near the existing structures on the 161 Waterman Hill Road lot, approximately a half mile from the two existing residences on the Property.

The application included a description of the proposed project, a site plan, and two photographs. The site plan did not show all structures and lot lines. A supplemental site plan was later introduced into the record.

On September 6, 2018, the DRB held a hearing on the application. It issued a decision approving the application on October 11, 2018. Neighbors subsequently appealed that decision to this Court.

**Discussion**

Neighbors raise seven Questions in their Statement of Questions.[1] The Questions ask the Court to determine whether the DRB erred in relying upon the site plans submitted by the Tuggles because the plans failed to comply with Table 5.1 of the Regulations; whether the DRB erred in approving the PUD because the proposed development does not constitute a "contiguous group of dwellings within a compact area" pursuant to § 5.06(D)(10)(b); and whether the DRB abused its discretion in granting the permit because the project is not contiguous as defined by the Regulations.[2]

We first address the threshold issue of whether the Tuggles submitted adequate supporting materials to the DRB. We then turn to the remaining issues.

I. **Whether the Tuggles' application meets the requirements of Table 5.1 of the Regulations.[3]**

Table 5.1 of the Regulations requires applications for conditional use and site plan review to include:

> A plan drawn to scale prepared by a licensed engineer, surveyor, land planner, or as otherwise approved by the [DRB] showing the following: 1. north arrow and

---

[1] As presently before the Court, Neighbors' Statement of Questions is phrased as if the Court were conducting a de novo review of the Tuggles' application. This is not the posture of this on-the-record appeal. We therefore rephrase Neighbors' Questions to reflect this type of review. The Court will interpret the Questions to ask whether the DRB erred in reaching the conclusions made with respect to each issue raised in each Question.

[2] The Town points out that Neighbors' Statement of Questions contains some broad questions, particularly Questions 2 and 3, which ask whether the Project complies with the entirety of Regulations § 5.06. Neighbors' briefs, however, are much narrower in scope. Specifically, their briefs address whether the Project complies with Regulations § 5.06(D)(10) and § 5.06(D)(10)(b), as well as the site plan requirements set forth in Table 5.1. Neighbors' Statement of Questions also includes Questions addressing these more specific issues.

The Town argues that, to the extent the Statement of Questions raises any issues of compliance with the aspects of § 5.06 which were not specifically raised by other Questions or the Neighbors' briefs, Neighbors have waived those arguments by failing to brief the issues. See In re P&R Assocs., LLC, No. 74-6-12 Vtec, slip op. at 2 (Vt Super. Ct. Envtl. Div. Feb. 1, 2013) (Walsh, J.) (dismissing a number of an appellant's Questions in their Statement of Questions in an on-the-record merits decision because the issues were not briefed) (citing McAdams v. Town of Barnard, 2007 VT 61, ¶ 8, 182 Vt. 259 ("Arguments not briefed are waived."); In re T.A., 166 Vt. 625, 626 (1997) (mem.) ("Issues not briefed are waived.")). Accordingly, we limit the scope of the Statement of Questions to those issues raised by Neighbors in their briefs. This is clearly their understanding of the relevant issues before the Court. We further note that they appear to not contest the Town's assertion, as it was not addressed in their reply brief.

We note that Neighbors also raise Question 6, regarding § 5.07. That section, however, was not briefed by any party in this matter, nor is the section cited in the underlying DRB decision. Therefore, Question 6 is **DISMISSED**.

[3] The Town filed a motion for leave to file a supplemental response to Neighbors' reply brief related to a discrete issue raised with respect to the site plans. We **GRANT** that motion.

scale; 2. legal property boundaries; 3. existing and proposed features . . . and 4. traffic and pedestrian circulation.

Regulations Table 5.1. Regulations § 5.06(C)(3)(b) incorporates Table 5.1 into the PUD requirements.

Neighbors assert that both site plans submitted by the Tuggles fail to comply with Table 5.1. They assert that the original hand-drawn site plan that was submitted did not show all structures or the lot lines and only depicted the project site, not the entirety of the Tuggles' Property. They further assert that the supplemental site plan filed with the DRB also failed to show all structures, lot lines, and denotes an improper acreage and address for the Property. Therefore, they assert, the DRB relied upon insufficient information when it was reviewing the application and failed to apply the standards set forth in Table 5.1.

The Town disagrees, arguing that, while the original site plan the Tuggles submitted was deficient, the supplemental site plan was sufficient. It further asserts that, when viewed together, the site plans adequately satisfy Table 5.1.

The plain language of Table 5.1 affords discretion to the DRB to approve the site plans submitted to it for review. See In re Application of Lathrop Ltd. P'ship I, 2015 VT 49, ¶ 22, 199 Vt. 19 (when interpreting a municipal regulation "we start with the plain language and will enforce it according to its terms if it is unambiguous.") Here, two plans were submitted. Read together, those plans gave the DRB, in its discretion, a full understanding of the site and the proposed development such that it concluded the plans complied with Table 5.1. Further, the plans seem to have given Neighbors a full understanding of the development, as shown by the testimony provided at the public hearing below.

We note that no issues with the adequacy of the site plans were raised in the proceedings below, other than the DRB pointing out the uncontested deficiencies with the originally submitted plan. Those deficiencies remain uncontested in this appeal. With respect to the supplemental site plan's depictions of lot lines and structures, Neighbors contest their accuracy but identify no specific errors for the Court to analyze. We further note that the additional deficiencies in the supplemental site plan proffered by Neighbors related to acreage and the address of the Property, do not fall within the scope of Table 5.1.

4

The DRB has authority to approve plans that meet Table 5.1 requirements. We have received no allegation that the site plans relied upon, read together, provided misleading information to either the DRB or the interested parties regarding the scope of the project presently before the Court. Nor have we received specific allegations of deficiencies in the site plans related to the site plan requirements. Therefore, we conclude that the DRB did not err in concluding that the site plans provided by the Tuggles complied with Table 5.1.

## II. Whether the proposed development complies with Regulations §§ 5.06(D)(10) and 5.05(D)(10)(b).

Regulations § 5.06(D)(10) sets forth additional standards for PUDs located in the Rural Residential District. The section states that PUDs within this district "shall be designed to blend new development into the rural landscape and maintain important natural, scenic and cultural resources as described in the Town Plan." Regulations § 5.06(D)(10). Therefore, PUDs in the Rural Residential District "are encouraged to be designed in accordance with the standards for either crossroads hamlets or farmstead clusters." Id.

Farmstead clusters:

[M]ay be designed in a manner which replicates a traditional Vermont farmstead, characterized by a variety of building scales, which visual character is typified by the appearance of a principle dwelling and a mix of agricultural buildings . . . located within a compact area surrounded by open farmland.

Regulations § 5.06(D)(10)(b). In relevant part, farmstead clusters "shall be designed to include . . . a contiguous grouping of dwellings within a compact area" and be made up of "no fewer than three dwellings." Regulations § 5.06(D)(10)(b)(i)—(ii).

### a. Compliance with § 5.06(D)(10)(b)

The Town asserts that, based on the plain language of § 5.06(D)(10), the present application is not required to comply with § 5.06(D)(10)(b). Instead, PUDs in the Rural Residential District must only "be designed to blend new development into the rural landscape and maintain important natural, scenic and cultural resources." Regulations § 5.06(D)(10). Alternatively, it asserts that the Regulations use only permissive language with respect to farmstead clusters such that it is not a mandatory provision.

5

Neighbors disagree with this assertion and offer that the PUD must comply with § 5.06(D)(10)(b). They also appear to contend that the DRB reviewed the Tuggles' application as one for a farmstead cluster and therefore the application must comply with § 5.06(D)(10)(b).

In interpreting zoning ordinances, we apply familiar rules of statutory construction. In re Appeal of Trahan, 2008 VT 90, ¶ 19, 184 Vt. 262. First, we "construe words according to their plain and ordinary meaning, giving effect to the whole and every part of the ordinance." Id. (citations omitted). If there is no plain meaning, we will "attempt to discern the intent from other sources without being limited by an isolated sentence." In re Stowe Club Highlands, 164 Vt. 272, 280 (1995). In construing statutory or ordinance language, our "paramount goal" is to implement the intent of its drafters. Colwell v. Allstate Ins. Co., 2003 VT 5, ¶ 7, 175 Vt. 61. We will therefore "adopt a construction that implements the ordinance's legislative purpose and, in any event, will apply common sense." In re Laberge Moto-Cross Track, 2011 VT 1, ¶ 8, 189 Vt. 578 (quotations omitted); see also In re Bjerke Zoning Permit Denial, 2014 VT 13, ¶ 22 (quoting Lubinsky v. Fair Haven Zoning Bd., 148 Vt. 47, 49 (1986)).

The crux of our present analysis is the use of the word "shall" with respect to the first sentence of § 5.06(D)(10) and "encouraged" with respect to farmstead clusters. The Vermont Supreme Court has provided guidance on the effects of these terms when found in zoning regulations. Terms like "shall" and "must" are examples of mandatory language which "set[] forth a requirement rather than a recommendation." In re B & M Realty, LLC, 2016 VT 114, ¶ 35, 203 Vt. 438. Alternatively, "provisions that 'recommend' or 'encourage' certain uses are generally insufficient to create an enforceable obligation." Id. (citations omitted).

The Regulations create this dichotomy. The Regulations use the mandatory term "shall" in the first aspect of § 5.06(D)(10). However, the DRB is merely "encouraged" to design PUDs pursuant to § 5.06(D)(10)(b), which defines farmstead clusters. The plain meaning reflects an intent that § 5.06(D)(10)(b) is permissive, not mandatory. See, e.g., State v. DeRosa, 161 Vt. 78, 80 (1993) ("[W]e presume the [drafters] used the language advisedly.") (citation omitted). As such, based on the plain meaning of the Regulations, we conclude that the Tuggles' PUD application was required to comply with the first sentence of § 5.06(D)(10) but not required to comply with § 5.06(D)(10)(b).

6

Therefore, the Neighbors argument that the present application fails to conform to the features of farmstead clusters described in § 5.06(D)(10)(b) is irrelevant under the Regulations.[4] Therefore, we answer Questions 1 and 5, as reformatted pursuant to footnote 1 above, in the negative.

### b. Compliance with § 5.06(D)(10)

To the extent Neighbors' Question 4 raises the issue of whether the DRB erred in concluding that the proposed development complied with § 5.06(D)(10) by blending into the rural landscape and maintaining important natural, scenic, and cultural resources, we conclude that this finding is not in error.

The Tuggles' proposed development is a dwelling unit to house long-term farm help for their working farm in the Rural Residential District. This development is to occur in an existing clearing and will be placed adjacent to existing agricultural structures. Therefore, the DRB's conclusion that the proposed development complied with the requirements of § 5.06(D)(10) was supported by substantial evidence and not in error.[5]

### Conclusion

For the foregoing reasons, we conclude that the DRB did not err in relying upon the site plans submitted by the Tuggles and concluding that the plans complied with Table 5.1. We further conclude that the DRB did not err in concluding that the application complied with

---

[4] To the extent Neighbors assert that the Tuggles sought PUD approval specifically as a farmstead cluster, such an assertion is not supported by the record. The Tuggles' application does not state that it is a farmstead cluster and the Tuggles only mentioned compliance with § 5.06(D)(10)(b) briefly in the public hearing. Therefore, while the DRB did conclude that the application complied with this subsection, the Tuggles' brief comment does not offer a separate basis for requiring the DRB to apply § 5.06(D)(10)(b).

[5] Question 7 asks "[d]o the farm structures in the proposed development meet the definition of 'unit' for the purpose of approving the PUD under the [Regulations]?" Rewritten pursuant to our above footnote to comport with the on-the-record posture of this appeal, Question 7 would read: "Did the DRB err in concluding that farm structures in the proposed development meet the definition of 'unit' for the purpose of approving a PUD under the Regulations?" While there is no direct cite to a Regulations provision in Neighbors' original Question, the Town directs us to § 5.06(D)(12), which requires that "[a]ll PUDs must be three units or more."

In its final Plan Review, the DRB concluded that the Tuggles' application complied with § 5.06(D)(12) because it contained three dwelling units. The DRB did not include farm structures in this conclusion. As such, the DRB did not reach the conclusion Neighbors assert it did and, therefore, the alleged error proffered by Neighbors did not occur. We decline to reach the underlying question implicit to Question 4 (i.e., whether farm structures meet the definition of "unit" in § 5.06(D)(12)) in light of this conclusion, as to do so would be to offer an advisory opinion. Laberge Shooting Range JO, No. 96-8-16 Vtec, slip op. at 6 (Vt. Super Ct. Envtl. Div. Jan. 4, 2017) (Walsh, J.) (citation omitted).

§ 5.06(D)(10). Lastly, we conclude that compliance with the farmstead cluster characteristics set forth in § 5.06(D)(10)(b) is permissive, not mandatory. Therefore, the DRB's conclusion that the application complied with this subsection, whether or not in error, is irrelevant to its approval.

For these reasons, we **AFFIRM** the DRB's approval of the present application.

This concludes the matter before the Court. A Judgment Order accompanies this Decision.

Electronically signed on May 31, 2019 at 09:40 AM pursuant to V.R.E.F. 7(d).

_____
Thomas G. Walsh, Judge
Superior Court, Environmental Division